(115 App. Div. 593)

## VAN NAME v. BARBER.

(Supreme Court, Appellate Division, Second Department. November 16, 1906.)

1. EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

A merchant employed a clerk to procure orders for goods and deliver them. The orders he received he entered in an order book carried for that purpose, and he put up the orders from the entries in the book. The merchant himself kept regular books of account, in which he entered orders taken by the clerk, copying the same from the order book. The clerk could not testify as to the different items purchased and delivered, their amount, or the condition of a customer's account. *Held*, that the clerk was not such a clerk as to render the books of account inadmissible, for he did not have such knowledge as enabled him to testify on the subject of the goods sold.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1454–1458.]

2. SAME.

In an action for merchandise sold, the evidence showed that the merchant, since deceased, kept his own books of account, that he employed a clerk to obtain orders and fill them, that the clerk obtained orders from defendant, and that the merchant entered orders taken by the clerk, copying them from the order book used by the clerk. A third person, who had been a customer of the merchant, testified that the books of account kept by the merchant were correct, on being compared with the customer's pass book. Another customer testified that he had examined his account in the merchant's books and found them correct. *Held*, that the books of account were properly received in evidence.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1625–1634.]

3. SAME—ENTRIES IN BOOKS OF ACCOUNT—CREDIT ENTRY—PRESUMPTIONS.

An entry of payment by a merchant in his books of account, made at a time when its operation is against his interest and when he had no motive to give a false credit, is admissible, and prima facie establishes payment.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1432, 1433, 1481.]

4. SAME.

A merchant kept books of account, which showed merchandise sold and entries of payment made on account. The books of account showed a sale on August 27, 1898, and a credit of part payment June 26, 1899. The entry of payment was in the handwriting of the merchant, who kept his own books of account. *Held*, that the entry of payment was admissible against the customer in an action for goods sold, without proof of actual payment.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1451.]

5. LIMITATION OF ACTIONS—RUNNING ACCOUNTS—PARTIAL PAYMENTS—EFFECT.

Where a payment is made on a running account for goods sold and delivered by a merchant within six years prior to the commencement of the action therefor, the presumption is, in the absence of evidence to the contrary, that the payment was made to apply on the balance unpaid, which

was a sufficient recognition of the validity and existence of the debt and a promise to pay the remainder.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, § 712.]

Appeal from Municipal Court, Borough of Richmond, First District.

Action by George Van Name, as administrator of Joseph H. Van Name, deceased, against Frederick T. Barber. From a judgment of the Municipal Court in favor of plaintiff, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, RICH, and MILLER, JJ.

William T. Croak, for appellant.
Frank H. Innes, for respondent.

RICH, J. Action was brought to recover an unpaid balance of the purchase price for groceries and provisions alleged to have been sold and delivered by plaintiff's intestate to defendant, between the 19th day of October, 1896, and August 27, 1898. All of the items charged in the account accrued prior to August 28, 1898, and each of such charge was outlawed upon its face, but for the fact that a cash payment of $10 was entered upon the credit side of such account under date of June 26, 1899.

Upon the trial the plaintiff proved that one Coates, in the employ of his intestate during the years 1896, 1897, and 1898, went to the defendant's residence on different occasions during those years, and there received orders for groceries and provisions, which he entered in an order book carried for that purpose. The orders so received by him he put up from the entries in the book, and delivered to the defendant at his residence on the days following the days on which each order was given. The duties of Coates were to get orders and deliver them. He is not shown to have had any other duties connected with the business. He testified that he was the decedent's clerk, and "had a sort of general knowledge of what was going on in the business." The plaintiff's intestate had no bookkeeper, but kept regular books of account, in which he entered all orders taken by Coates, copying the same from the order book used by the latter. It was proven by one Wright that he had dealt with the decedent on credit for many years, and from time to time had settled and paid his account; that the decedent kept such account in his store books, and furnished the witness with a pass book in which all articles ordered and delivered were entered at the time of their purchase. The decedent rendered bills from time to time, the items of which the witness compared with the items in his pass book and found them correct. Payments were entered in this pass book, when made, in red ink, by the decedent, and were found by the witness to be correct. The witness never saw the decedent's store books, or his account as therein entered. The pass book, and so much of the decedent's store book of accounts as contained the account of the witness during the time covered by the entries in the pass book, were received in evidence over the defendant's objection. The plaintiff testified that there came into

his possession, as administrator, the regular books of account kept by his father in his business, on which there appeared an account against the defendant contracted during the three years testified to by the witness Coates; that the entries composing such account were all in the handwriting of his father, the charges being entered in black ink, and the credits in red ink; that he had dealt with his father in his lifetime, purchasing goods on credit and running an account, on which at different times he had made payments; that on different occasions while such account was running he examined his father's books, and found that his account as entered therein was correct. The book containing the account against the defendant was then received in evidence, to which an exception was taken; and this raises the only serious question we are called upon to consider.

While it does not clearly appear that the defendant gave the orders personally to Coates, it is shown that his office was at his residence, where the orders were given and groceries and provisions delivered. The account is for necessaries, which it was his legal duty to provide for his family, and he must be presumed to have known, at least, of the giving of the orders and of their delivery. The book account consisted of several pages of charges, commencing on October 19, 1896, and ending on August 27, 1898. Between these dates there were three credit entries of cash paid, amounting to $305; each credit being deducted from the amount then unpaid and carried forward. At the time of the last payment the debit balance was $283. Three credit entries were thereafter made as follows:

"11/15/98.  By Cash 10."
"1/20/99.  By Cash 10."
"6/26/99.  By Cash 10."

Each credit was deducted and the balance carried out. The plaintiff's intestate died February 18, 1900, and this action was commenced by the personal service of the summons and complaint on June 20, 1900. Coates was not such a clerk as to render the book inadmissible in evidence. To have had this result, he must have had such knowledge as would enable him to testify upon the subject of the goods sold. Matter of McGoldrick v. Traphagen, 88 N. Y. 334; Smith v. Smith, 163 N. Y. 168, 57 N. E. 300, 52 L. R. A. 545. While he had knowledge of the orders given by defendant for goods, and that they were delivered, in a general way, he could not testify as to the different items purchased and delivered, their amount, or the condition of defendant's account. These facts were presumably known only by the decedent. He had no bookkeeper, and, all the formalities having been established, the book was properly received in evidence, and, although not conclusive as to its contents, was entitled to consideration in connection with the other evidence. Any other interpretation of the rule, in cases where the party is dead and kept no clerk able to testify to the truth of the entries in his books, would result, not only in great inconvenience, but in a denial of justice.

The appellant argues that the rule does not extend to credit entries, and that such entries have no force or effect unless accompanied by proof that the payments were in fact made, and called our attention to

In re Gladke, 45 App. Div. 625, 60 N. Y. Supp. 869, as an authority sustaining his contention. We do not think that case states the rule applicable to this action. If it was intended to declare the proposition therein stated as a general rule applicable to all cases in which credits appear in a running account or indorsements are made upon written securities, the court in making that decision evidently overlooked the well-settled law of this state that a credit entry or indorsement of payment, made at a time when its operation is against the interest of the party making it and when he had no motive to give a false credit, is admissible as evidence in favor of the party making it, and prima facie establishes such payment. Matter of Kellogg, 104 N. Y. 648, 10 N. E. 152; Mills v. Davis, 113 N. Y. 243, 21 N. E. 68, 3 L. R. A. 394, in which many of the earlier authorities are cited. In the case under consideration the statute of limitations would not have barred the cause of action, had no payments been made, until August 27, 1904, four years and six months after the death of plaintiff's intestate. The last credit entry was made on June 26, 1899, more than five years before the aid of the statute could have been invoked to bar the claim. The entry is in the handwriting of the plaintiff's intestate, who died four years and six months before the bar of the statute could have been asserted, which establishes that the entry was made at a time when no motive for a false credit could have existed, and that it was against the interest of the creditor making it, which brings the case within the rule established by the authorities cited; and the entry was admissible against the defendant without proof of its actual payment. Matter of Kellogg, supra; Risley v. Wightman, 13 Hun, 163; Sherman v. Matthieu, 106 App. Div. 368, 94 N. Y. Supp. 565.

A payment having been made upon this running account within six years prior to the commencement of this action, the presumption follows, in the absence of evidence to the contrary, that it was made to apply upon the balance unpaid (Smith v. Velie, 60 N. Y. 106), which was a sufficient recognition of the validity and existence of the debt, and a promise to pay the remainder is inferable and justified by the evidence.

The judgment must be affirmed, with costs. All concur.